**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RINGNECK, INC.,

   Plaintiff,

vs.              Case No. 3:08-cv-261-J-32JRK

JAMES R. BUCK,

   Defendant.

## **ORDER**[1]

This case is before the Court on Plaintiff Ringneck, Inc.'s (Ringneck) Motion for Summary Judgment on All Issues Except Payment (Doc. 51); Ringneck's Brief in Support of Motion for Summary Judgment on All Issues Except Payment (Doc. 52); Ringneck's Motion for Reconsideration of the Court's July 30, 2009 Order in Light of Subsequent Evidence, Argument, and Citation of Authority, or, in the Alternative, Motion for Summary Judgment Directly Addressing the Issue of Payment (Doc. 53) (Motion for Reconsideration); and Ringneck's Brief in Support of its Motion for Reconsideration (Doc. 54). Defendant James R. Buck (Buck), who is proceeding pro se, has filed an Ammended [sic] Motion Asking the Court to Deny Plaintiff's Motion for Summary Judgment and Motion for Reconsideration for Summary Judgment (Doc.

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

65) (Buck's Amended Motion) to which Ringneck has responded. (Doc. 66).

After conducting a hearing on July 15, 2009 in this action to enforce a personal guaranty, the Court issued an order (the Order) on July 30, 2009 which denied the parties' cross motions for summary judgment. (Doc. 48). However, the Order authorized Ringneck to file another motion for summary judgment limited to addressing Buck's affirmative defenses other than payment. If Ringneck filed such a motion addressing Buck's other defenses, the Order afforded Buck an opportunity to respond. Pursuant to the Order, the parties did so. (Docs. 51 and 65). Additionally, the Court now reviews Ringneck's unsolicited Motion for Reconsideration (Doc. 53) and Buck's response (Doc. 65) regarding Buck's defense of payment.

## I. Legal Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any', that establish the absence of any genuine, material factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). In

determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

## II. Facts

Beginning in 2001, Innovative Technical Network Corporation began to borrow money from Columbus Bank and Trust Company (the "Bank"). (Doc. 1 ¶ 6; Doc. 9 at 1 ¶ 6) At some point thereafter, Innovative Technical Network Corporation changed its name to ITN/Grate Pallet, Inc. ("ITN"). (Doc. 1 ¶ 7; Doc. 9 at 1 ¶ 7) Ringneck alleges that on or about November 13, 2003, the Bank agreed to loan ITN funds in the amount of $2,300,175.00 in consideration of which ITN made, executed, and delivered to the Bank a promissory note (the "Note"). (Doc. 1 Ex. A; Doc. 27 at 1) The Note obligated ITN to pay to the Bank the principal sum of $2,300,175.00 on November 13, 2004. (Doc. 1 Ex. A; Doc 27 at 2) The Note further obligated ITN to pay interest at an initial rate of 4.50%, but which rate was variable and set at .50% above the Bank's prime rate. (Doc. 1 Ex. A; Doc. 27 at 2) The Note stated that it was secured by the guaranties of Buck; Charles L. Hoffman ("Hoffman"); Willis M. Ball, III ("Ball"); and Larry C. Williams ("Williams"). (Doc. 1 Ex. A; Doc. 27 at 2)

Ringneck claims that on or about December 10, 2004, the Bank, in consideration of the sum of $2,748,804.04, transferred and assigned the Note and

3

Buck's guaranty to Ringneck[2] (Doc. 1 ¶ 13; Doc. 27 at 3; Doc. 26 at 4 ¶ 6). Ringneck has offered evidence of this allegation in the form of Williams' affidavit. (Doc. 26 at 4 ¶ 6) Ringneck further contends that pursuant to the assignment, Ringneck is the present owner and holder of the Note and Buck guaranty. (Doc. 1 ¶ 13; Doc. 26 at 4 ¶ 7; Doc. 27 at 3) Ringneck asserts that there is an unpaid balance on the Note. (Doc. 1 ¶ 14; Doc. 27 at 3)

Pursuant to the Buck guaranty, Ringneck has made demand for repayment of the Note from Buck, but Buck has refused. (Doc. 1 ¶ 14; Doc. 9 at 2 ¶ 14; Doc. 27 at 3) Ringneck seeks judgment against Buck on the Buck guaranty for the unpaid principal of the Note, plus interest. (Doc. 1 ¶ 16) Ringneck asserts that the amount due under the Note and the Buck guaranty was $3,495,463.17 as of December 31, 2008. (Doc 27 at 3; Doc. 26 at 11 ¶ 5) According to Ringneck, the amount of interest accruing daily under the Note and Buck guaranty is $907.42 beginning on January 1, 2009. (Doc. 27 at 3; Doc. 26 at 11 ¶ 6) Buck contests Ringneck's assertions of his personal liability under the Buck guaranty. (Doc. 9 at 2-8; Doc. 29 at 1-4) Accordingly, in both his filings with the Court and his statements during the hearing,

---

[2]Ringneck alleges that the assignment also included the guaranties of Ball, Williams, and Hoffman. Ringneck initially sought to enforce both the Buck and Hoffman guaranties. (Doc. 1 ¶ 15) The Court entered a consent judgment in favor of Ringneck against Hoffman in the amount of $500,000. (See Doc. 19) Buck asserts, and Ball and Williams do not deny, that Ball and Williams own and control Ringneck which may explain why Ringneck is only pursuing enforcement as to the Buck guaranty. (Doc. 9 at 5 ¶ 5(b); Id. at 6 ¶ 5(d); Doc. 52 at 9)

4

Buck has raised numerous arguments and affirmative defenses.

**III. Discussion**

**a.) Ringneck's Motion for Summary Judgment on All Issues Except Payment**

In the Answer, Defenses and Affirmative Defenses of James R. Buck (Doc. 9) (Buck's Answer), the Defendant's Memorandum to Deny Plaintiff's Motion for Summary Judgment (Doc. 29), and Buck's Amended Motion (Doc. 65), Buck presented several arguments and affirmative defenses to his liability under the Buck guaranty, including failure to state a cause of action, failure to join indispensable parties, payment[3], doctrine of merger, doctrine of unclean hands, laches, failure of consideration, revocation of the guaranty, set-off, waiver and estoppel, and material alteration of the principal obligation under the note. (See, e.g., Doc. 9). As the party asserting affirmative defenses, Buck must carry the burden of proving such defenses. See Beasley v. Wachovia Bank, 627 S.E.2d 417, 421 (Ga. Ct. App. 2006) ("Beasley misapprehends the role of affirmative defenses. As the party asserting those defenses, she, not the bank, bore the burden of proving those defenses."); Mahsa, Inc. v. Al-Madinah Petroleum, Inc., 625 S.E.2d 37, 42 (Ga. Ct. App. 2005) (stating that

---

[3]One of the defenses Buck has raised is that the loan obligations which he personally guaranteed have been paid in full, thus terminating any repayment obligations associated with the Buck guaranty. The Court will address this defense in a subsequent section of this order.

5

the burden of proof on affirmative defenses rested with the party asserting them).[4]

It cannot be disputed that Buck executed an unlimited personal guaranty of the Note on November 13, 2003. (See Doc. 1 Ex. C). Paragraph eight of the Buck guaranty states,

> "The Undersigned [here, Buck] waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged."

(Doc.1 Ex. C ¶ 8).

The express language of the Buck guaranty states that upon Buck's execution of the guaranty, Buck waived any and all defenses, except the defense of discharge

---

[4]The terms of the Note, the Buck guaranty, and the Transfer and Assignment require that the Court apply Georgia law in the resolution of this matter.

by payment in full. Where, as here,

> "the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it. No construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation."

B & C Tire & Battery, Inc. v. Cooper Tire & Rubber Co., 441 S.E.2d 468, 469-70 (Ga. Ct. App. 1994) (citing Paige v. Jurgensen, 419 S.E.2d 722, 723 (Ga. Ct. App. 1992)). See also Lothridge v. First Nat. Bank of Gainesville, 458 S.E.2d 887, 890 (Ga. Ct. App. 1995).

A review of Georgia caselaw demonstrates how Georgia courts have applied this fundamental contract rule when adjudicating similar disputes. In the case of Reece v. Chestatee State Bank, 579 S.E.2d 11 (Ga. Ct. App. 2003), it was undisputed that the Reeces had executed a note as well as a guaranty of that note. Reece, 579 S.E.2d at 14. As in the present case, the personal guaranty signed by the Reeces unconditionally obligated them for payment of the note. Id. As the court stated in Reece,

> "[T]he guaranty expressly provides that 'the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due of the debts, liabilities and obligations' arising out of Note 1, 'and any extensions, renewals, or replacements thereof.' The guaranty also states that 'no act or thing, except full payment and discharge of all indebtedness, shall in any

7

> way exonerate the Undersigned or modify, reduce, limit, or
> release the liability of the Undersigned hereunder' and that
> the guaranty 'shall continue to be in force and be binding
> upon the Undersigned, whether or not all Indebtedness is
> paid in full, until this guaranty is revoked by written notice
> actually received by the Lender.'"

Id. at 14.

After reviewing the above guaranty language, which is similar to that found in the Buck guaranty, the court found that the Reeces' guaranty agreement was unambiguous, explicit, and unconditional as to its material terms. Id. Accordingly, the court held that the trial court did not err in enforcing the Reeces' obligation. Id.

An analysis of Ramirez v. Golden, 478 S.E.2d 430 (Ga. Ct. App. 1996) is also instructive. Ramirez executed an unconditional guaranty of payment and performance obligating himself to personally pay the indebtedness of a corporate entity of which he was a corporate officer in the event of the corporate entity's default on a promissory note. Ramirez, 478 S.E.2d at 430. "Ramirez agreed that the provisions of the guaranty were applicable to 'all renewals, amendments, extensions, consolidations, and modifications of the loan documents.'" Id. In addition to consenting to several waiver clauses, Ramirez agreed to forgo "any legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled." Id. Upon analysis, the Ramirez court found that the unconditional guaranty agreement at issue was "unambiguous, explicit, and unconditional as to its material terms." Id. at 431. The court stated, "Notwithstanding Ramirez's argument to the contrary, a guarantor

8

may consent in advance to a course of conduct which would otherwise result in his discharge . . . This includes waiving defenses which otherwise would be available to a guarantor." Id. Accordingly, the court concluded that,

> "when Ramirez signed the unconditional guaranty, he expressly waived and agreed not to assert or take advantage of 'any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled.' By assenting in advance to a waiver of all legal and equitable defenses, Ramirez is foreclosed from asserting that he was discharged under [Georgia statutes]."

Id. See also Baby Days, Inc. v. Bank of Adairsville, 463 S.E.2d 171, 174 (Ga. Ct. App. 1996) (stating that a guarantor may consent in advance to a course of conduct which would otherwise result in his discharge, and this includes the waiver of defenses otherwise available to a guarantor).

Upon applying a fundamental rule of contract law to the clear and unambiguous language of the Buck guaranty and reviewing relevant Georgia caselaw, the Court finds that Buck is precluded from asserting any affirmative defenses other than payment. Thus, the Court will grant summary judgment as to all of Buck's affirmative defenses, other than the defense of discharge by payment.

**b.) Buck's Affirmative Defense of Payment in Full**

The Court now turns its focus to an affirmative defense permitted under the Buck guaranty, discharge by payment in full. Buck has repeatedly raised this

payment-in-full defense in his filings with the Court (See, e.g., Doc. 9 at 4; Doc. 29 at 3; Doc. 65 at 6) and has provided some evidence to support his position. (See, e.g., Doc. 29 Ex. D, F). Additionally, Buck raised this defense during the hearing.

In its July 30, 2009 Order, the Court denied plaintiff's motion for summary judgment on this defense. (Doc. 48). Plaintiff now seeks reconsideration of that Order. The Court has reviewed the materials provided by plaintiff in support of its motion for reconsideration and continues to believe that there are genuine issues of material fact concerning this defense. It is hereby:

**ORDERED:**

1. Plaintiff Ringneck, Inc.'s Motion for Summary Judgment on All Issues Except Payment (Doc. 51) is **GRANTED**.

2. Plaintiff Ringneck, Inc.'s Motion for Reconsideration of the Court's July 30, 2009 Order in Light of Subsequent Evidence, Argument, and Citation of Authority, or, in the Alternative, Motion for Summary Judgment Directly Addressing the Issue of Payment (Doc. 53) is **DENIED**.

3. By separate Order, the Court will set this case for trial.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of February, 2010.

_____
TIMOTHY J. CORRIGAN
United States District Judge

smm.
Copies to:
Honorable James R. Klindt
United States Magistrate Judge

Counsel of Record
Pro Se parties